UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GLENN DAMOND | * | CIVIL ACTION |
| VERSUS | * | NO. 25-1570 |
| EXPERIAN INFORMATION SOLUTIONS, INC., ET AL. | * | SECTION "O" (2) |

## REPORT AND RECOMMENDATION

The Honorable Brandon Long referred the following matters for a Report and Recommendation and instructed the undersigned to conduct a frivolous review in accordance with 28 U.S.C. § 1915(e)(2)(B):[1]

(1) Motion to Dismiss pursuant to Rule 12(b)(6) filed by Defendants Equifax Information Services LLC ("Equifax") and Trans Union LLC ("Trans Union") and adopted by Experian Information Solutions, Inc., the Memorandum in Opposition filed by Plaintiff, Reply Memorandum, and Sur-Reply Memorandum (filed without leave of court). ECF Nos. 13, 19, 21, 23, 25, 28.

(2) Motion for Default Judgment as to CSC Lawyers Incorporating Services ("CSC") filed by Plaintiff. ECF No. 27.

(3) Motion for Leave to File Amended Complaint filed by Plaintiff. ECF No. 29.

(4) Motion to Set Aside Default and Motion for Extension of Time to Answer Complaint filed by CSC Lawyers Incorporating Services, Plaintiff's Memorandum in Opposition to same, Defendant's Reply Memorandum, and Plaintiff's Sur-Reply (filed without seeking leave of court). ECF Nos. 31, 33, 34, 36.

(5) Motion to Strike Response/Memorandum in Support filed by Plaintiff. ECF No. 37

(6) Motion to Dismiss pursuant to Rule 12(b)(2) and 12(b)(6), and alternative Motion for More Definite Statement pursuant to Rule 12(e) filed by CDC-Lawyers Incorporating Services Company, Plaintiff's Memorandum in Opposition, and Defendant's Reply Memorandum. ECF Nos. 39, 41, 43.

No party requested oral argument pursuant to Local Rule 78.1, and same is unnecessary.

---

[1] ECF Nos. 38 & 42 (citing 28 U.S.C. § 636(b)).

Having considered the record, submissions, and applicable law, the undersigned RECOMMENDS that the Motion to Dismiss filed by Defendants Equifax Information Services LLC, and TransUnion LLC, and Experian Information Solutions, Inc. be GRANTED, but that Plaintiff be given 21 days within which to amend to state a FCRA claim, Plaintiff's Motion for Default Judgment as to CSC Lawyers Incorporating Services be DENIED, Plaintiff's Motion for Leave to File Amended Complaint be DENIED WITHOUT PREJUDICE to his right to file an Amended Complaint as to the FCRA claim as directed herein within 21 days, that CSC Lawyers Incorporating Services' Motion to Set Aside Default be GRANTED, that Plaintiff's Motion to Strike Response be DENIED, and that CSC Lawyers Incorporating Services' Motion to Dismiss for Lack of Personal Jurisdiction be GRANTED for the reasons stated herein.

## I.    <u>BACKGROUND</u>

Plaintiff filed this suit against Experian Information Solutions, Inc., TransUnion LLC, and Equifax Information Services LLC on July 30, 2025, asserting violations of the Fair Credit Reporting Act and Lanham Act as well as state law claims seeking billions of dollars in damages and injunctive relief.  ECF No. 1 at 1, 2, 6-9.  Plaintiff also appears to name CSC Lawyers Incorporating Services as a Defendant (*id.* at 2) but does not appear to assert any factual allegations or causes of action against that entity.  *See generally id.*

Plaintiff alleges that "Defendants" have profited from publishing inaccurate credit information and used his trade name "GLENN DAMOND"[2] without authorization, which allegedly caused financial and reputational harm (i.e., denial of housing, credit, and loans and business opportunities (movie distribution, music recordings, and book publication).  *Id.* at 1, 3-4 (¶¶ 14-29).  Plaintiff alleges that Defendants are consumer reporting agencies that have published

---

[2] Plaintiff asserts that he owns the registered trade name "GLENN DAMOND" for use commercially in artistic and literary works.  ECF No. 1 at 2 (¶2).

credit reports containing inaccurate and outdated information using the name "GLENN DAMOND," and after Plaintiff contacted Defendants in July 2024 and July 2025, Defendants continued to use the information and failed to produce original signatures or verified information. *Id.* at 2-4 (¶¶ 5-13, 30); *see also* ECF No. 1-1 at 22-25 (July 2024 and August 2024 correspondence).

Plaintiff lists several counts in his Complaint:

(1) Defendants negligently and/or willfully failed to reasonably investigate disputed items in violation of 15 U.S.C. § 1681i and failed to maintain accurate procedures in violation of 15 U.S.C. § 1681e(b), in violation of 15 U.S.C. §§ 1681n and 1681o. ECF No. 1 at 6 (Count 1).

(2) Defendants falsely used his trade name in a misleading manner, diluted and misappropriated his brand, and interfered with his commercial identity, in violation of 15 U.S.C. § 1125(a). *Id.* at 7 (Count 2).

(3) State law claims for misappropriation of trade name and interference with economic relationships under LA. CIV. CODE art. 2315. *Id.* at 9 (Count 4).

Plaintiff lists his request for lost earnings as Count 3 (*id.* at 8-9), but a requested remedy is not a separate cause of action.

## II.  **PENDING MOTIONS**

### A. **Defendants' Motion to Dismiss; Plaintiff's Motion for Leave to Amend**

Defendants Equifax, Trans Union and Experian seek dismissal pursuant to Rule 12(b)(6), arguing that Plaintiff's attack on Defendants for using his name on his credit report fails to state a cognizable claim under the FCRA. ECF No. 13-1 at 1-2.[3] Further, Plaintiff fails to identify how any report was inaccurate or how any alleged inaccuracy resulted from the failure to maintain reasonable procedures or conduct a reasonable reinvestigation, as necessary to state a claim. *Id.* at 4-5. Because Plaintiff's name is Glenn Damond, referring to him by that name cannot be

---

[3] Defendant Experian adopted and joined the motion. ECF Nos. 23, 25.

characterized as an inaccuracy.  *Id.* at 5.  And Plaintiff makes clear that his name is Glenn Damond as he identifies himself as same in the caption, introductory paragraph, and ¶ 2 of his Complaint in this case.  ECF No. 1.

In Opposition, Plaintiff asserts that the inaccurate reporting and unauthorized commercial use of his name include conflicting social security numbers, incorrect or misspelled names, incorrect addresses and employment information, and discrepancies in account data.  ECF No. 19 at 1-2, 5-6.  Plaintiff also alleges that Defendants sold his identity to third parties.  *Id.* at 2.  Plaintiff asserts that Defendants used Plaintiff's trade name when providing credit reports and consumer data to third party entities, such as banks, lenders and creditors, which Plaintiff contends creates a false sense of endorsements.  *Id.* at 3-4, 8-13.

In Reply, Defendants argue that Plaintiff cannot amend his complaint to expand his factual allegations via his Opposition Memorandum, and even if he were allowed to amend, these additional allegations are insufficient.  ECF No. 21 at 2, 5.  Further, since none of the Defendants is a creditor, debt collector, or furnisher of information, Plaintiff's newly asserted Fair Debt Collections Practices Act is meritless.  *Id.* at 2-3.  Defendants reiterate their argument that Plaintiff fails to state a claim for violation of either § 1681e(b) or § 1681i, and he has not pled any inaccuracy.  *Id.* at 3-5.

Although Plaintiff did not seek leave of court, he filed a Sur-Reply in which he states that the inaccurate information referred to in his complaint relates to his name, addresses, social security number, data "and everything that is inaccurate."  ECF No. 28 at 2.  Plaintiff then indicates that his Sur-Reply is submitted as an Amended Complaint.  *Id.*  Plaintiff then separately filed a Motion for Leave to File Amended Complaint, with a proposed amended complaint.  ECF Nos. 29, 29-1.

**B. Plaintiff's Motion for Default Judgment; CSC's Motion to Set Aside Default; Plaintiff's Motion to Strike Reply Memorandum**

Plaintiff seeks a default judgment based on the clerk of court's entry of default because he served CSC on September 4, 2025, but it failed to answer. ECF No. 27.

Defendant CSC moves to set aside the entry of default, asserting that it is merely the agent for service of Equifax, and it has no presence or dealings in Louisiana and thus is not subject to personal jurisdiction in Louisiana. ECF No. 31 at 3. CSC states that it received service and mistakenly believed it was simply accepting service for Equifax as it is not a credit reporting agency and has nothing to do with Plaintiff or this case. *Id.* at 3, 5. For those reasons, CSC asserts that good cause exists to set aside the entry of default, particularly given the confusing manner in which the complaint identifies it. *Id.* at 6-9.

In Opposition, Plaintiff asserts that service was proper and that jurisdiction exists because CSC acts as Equifax's agent for service of process throughout the United States. ECF No. 33 at 1-2. Plaintiff asserts that his claims are legally grounded and default was properly entered. *Id.* at 2-5. Plaintiff further asserts that CSC's mistake is not good cause and contends that its role is foundational. *Id.* at 5-7.

In Reply, CSC argues that Plaintiff's Complaint does not allege that CSC conducts business in Louisiana or even accepted service for Equifax in Louisiana. ECF No. 34 at 4. CSC is incorporated in Delaware, and its role as agent for service of process does not impute Equifax's contacts to it. *Id.* at 4-7. CSC provides an affidavit establishing that it performs no managerial or corporate governance functions for Equifax, has no office in Louisiana, performs no functions in Louisiana and, due to its sole role as agent, did not realize it was being sued directly rather than simply accepting service for Equifax in Georgia as its registered agent. ECF No. 34-1.

Plaintiff's Sur-Reply (again filed without leave of court) asserts that CSC's filing is

frivolous, violates Rule 11, and fails to satisfy the standard for setting aside default. ECF No. 36 at 1-3. Plaintiff argues that CSC's national operations establish purposeful availment for purposes of personal jurisdiction. *Id.* at 3-8. Plaintiff also moves to strike CSC's Reply Memorandum in support of its Motion to Set Aside Entry of Default on the basis that it raises new arguments. ECF No. 37 at 1-2.

### C. CSC's Motion to Dismiss

CSC filed a Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. ECF No. 39. CSC argues that the Complaint does not appear to identify it as a separate defendant nor does it make any allegations directed directly to it. *Id.* at 3, 5. Rather, it alleges various claims against "Defendants" related to their role as consumer reporting agencies. CSC is not, however, a consumer reporting agency. *Id.* at 4. CSC argues that, as Equifax's agent for service of process, it is not responsible for its principal's conduct, and the principal's contacts are not imputed to the agent. *Id.* at 3-4. Thus, CSC lacks minimum contacts with Louisiana, and even if jurisdiction existed, Plaintiff has failed to state a claim against CSC. *Id.* at 6-12. It further asserts that, at a minimum, the Complaint is so vague and ambiguous that a more definite statement is required. *Id.* at 13.

In Opposition, Plaintiff asserts that CSC is a proper defendant because it is Equifax's registered agent and, as such and because Equifax does business in Louisiana, CSC purposefully availed itself of Louisiana law and consented by registration. ECF No. 41 at 1-4. Plaintiff also asserts that collective allegations included CSC are proper and CSC is liable as Equifax's agent. *Id.* at 4-8. Plaintiff argues that CSC does more than merely accept service and it participated in Equifax's business operations. *Id.* at 11-16.

In Reply, CSC argues that Plaintiff improperly cites caselaw, fails to point to any facts and

legal support for his assertion that Equifax's contacts with Louisiana suffice to establish personal jurisdiction over its non-Louisiana based registered agent for service of process, and fails to meaningfully address CSC's motion to dismiss as all the allegations relate to co-defendants' conduct as credit reporting agencies with no factual allegations whatsoever about any independent conduct of CSC giving rise to any potential claim.  ECF No. 43.  CSC also asks the Court to sanction Plaintiff under Rule 11.  *Id.* at 2.[4]

## III.    APPLICABLE LAW AND ANALYSIS

### A.   Plaintiff's Motion to Strike Reply Memorandum

A motion to strike is governed by Rule 12(f), which provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).

> "Redundant" matter consists of allegations that constitute "a needless repetition of other averments in the pleadings." "Immaterial" matter is that which "has no essential or important relationship to the claim for relief or the defenses being pleaded," such as superfluous historical allegations, "or a statement of unnecessary particulars in connection with and descriptive of that which is material." "Impertinent" matter overlaps with "immaterial" matter and "consists of statements that do not pertain, and are not necessary, to the issues in question." Finally, "scandalous" matter "improperly casts a derogatory light on someone, most typically on a party to the action[,]" but "it is not enough that the matter offends the sensibilities of the objecting party or the person who is the subject of the statements in the pleading, if the challenged allegations describe acts or events that are relevant to the action."[5]

---

[4] Requests for court action must be made by motion.  FED. R. CIV. P. 7(b)(1).  A memorandum is not a motion.  *Ruiz v. Weeks Marine, Inc*., No. 23-5428, 2025 WL 3088900, at *9 (E.D. La. Oct. 23, 2025) (Guidry, J.).  Moreover, a Rule 11 motion must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  FED. R. CIV. P. 11(c)(2).  In addition, a Rule 11 motion for sanctions must be served on the party under Rule 5 but not filed with the court unless, after 21 days of service, the challenged paper, claim, defense, contention or denial is not withdrawn or corrected.  *Id.*

[5] *Rivera v. Robinson*, No. 18-14005, 2019 WL 1326588, *2 (E.D. La. Mar. 25, 2019) (Lemmon, J.) (quoting 5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed. 2004)); *Bayou Fleet P'ship v. St. Charles Par.*, No. 10-1557, 2011 WL 2680686, at *5 (E.D. La. July 8, 2011) (Lemelle, J.) (noting that immateriality is established by showing that the challenged allegations "can have no possible bearing upon the subject matter of the litigation").

A Rule 12(f) motion to strike is a "drastic remedy to be resorted to only when required for the purposes of justice."[6]  If the allegations or exhibits are material or have any possible bearing on the subject matter, same should not be stricken.[7]

A motion to strike should be granted only when "the allegations are prejudicial to the defendant or immaterial to the lawsuit."[8]  Indeed, even when technically appropriate and well-founded, a motion to strike should be denied in the absence of prejudice.[9]  Thus, to succeed on a motion to strike, the movant must show that the allegations being challenged are both so unrelated as to be unworthy of any consideration and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party.[10]

By its own terms, a motion to strike is directed to pleadings, which Rule 7 defines as the complaint, answer, answer to a counterclaim, answer to a crossclaim, third-party complaint, and reply to an answer.  FED. R. CIV. P. 7(a).  Although the Fifth Circuit has not definitively addressed whether a Rule 12(f) motion targeting a brief is appropriate in light of Rule 7(a),[11] other circuits have limited Rule 12(f) motions to pleadings to deny Rule 12(f) motions directed to motions, briefs

---

[6] *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962); *see also Synergy Mgmt., LLC v. Lego Juris A/S*, No. 07-5892, 2008 WL 4758634, at *1 (E.D. La. Oct. 24, 2008) (Engelhardt, J.) ("Motions to strike made under Rule 12(f) are viewed with disfavor by the federal courts, and are infrequently granted.").

[7] *See Greater New Orleans Fair Hous. Action Ctr. v. Kelly*, 364 F. Supp. 3d 635, 656 (E.D. La. 2019) (Vance, J.) ("None of the allegations to which defendants object is immaterial to plaintiff's complaint, and therefore the Court will not strike them."); *Advanced Com. Contracting, Inc. v. Certain Underwriters at Lloyds of London*, No. 98-1296, 1998 WL 373407, at *1 (E.D. La. July 2, 1998) (Vance, J.) (quoting *Miller v. Group Voyagers, Inc.*, 912 F. Supp. 164, 168 (E.D. Pa. 1996)).

[8] *Johnson v. Harvey*, No. 96-3438, 1998 WL 596745, at *7 (E.D. La. Sept. 8, 1998) (Vance, J.).

[9] *Abene v. Jaybar, LLC*, 802 F. Supp. 2d 716, 723 (E.D. La. 2011) (Fallon, J.) (quoting 5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed. 2004)); *United States v. Coney*, 689 F.3d 365, 379 (2012) (quoting *Augustus*, 306 F.2d at 868).

[10] *Morehouse v. Ameriquest Mortg. Co.*, No. 05-75, 2005 WL 8160875, at *1 (E.D. Tex. July 14, 2005).

[11] *Coney*, 689 F.3d at 379 n.5 (5th Cir. 2012) (assuming, without deciding, that a Rule 12(f) motion may be directed towards filings other than pleadings as defined by Rule 7(a)).

or memoranda.[12]  Commentators[13] and numerous decisions from this district[14] and other districts[15] are in accord.

Plaintiff seeks to strike Defendant's Reply Memorandum.  But a reply memorandum is not a "pleading" under Rule 7.  Thus, it is not properly subject to a Rule 12(f) motion to strike.

## B.  Standards for Entry of Default Judgments/Setting Aside Entry of Default

After the Clerk of Court has found a defendant in default, the Court must determine whether entry of a default judgment should follow.[16]  First, service of process must be effective under the

---

[12] *See, e.g.*, *Searcy v. Social Sec. Admin.*, 956 F.2d 278 (10th Cir. 1992) (unpublished) (adopting R&R holding that Rule 12(f) does not apply to motions and memoranda).

[13] *Sharkey v. Humphreys Cnty.*, No. 18-17, 2020 WL 2527027, at *1 (N.D. Miss. May 18, 2020) (citing 5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1380 (3d ed.) ("However, as the cases make clear, it is n[ot] an authorized nor a proper way . . . to strike an opponent's affidavits . . . Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f).")); 2 MOORE'S FEDERAL PRACTICE § 12.37 [2] (3d ed. 1999) ("Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike.").

[14] *Robles v. Quirch Foods, LLC*, No. 24-251, 2025 WL 871606, at *4 (E.D. La. Mar. 20, 2025) (Long, J.) (denying motion to strike motion to dismiss because motions are not pleadings within the scope of Rule 12(f)), *aff'd*, No. 25-30278, 2025 WL 2908822 (5th Cir. Oct. 14, 2025); *Girod Titling Tr. v. Pittman Assets, LLC*, No. 24-1993, 2024 WL 4471458, *4 (E.D. La. Oct. 11, 2024) (Vitter, J.) (holding that motion to remand is not a pleading within the scope of Rule 12(f)); *Pruco Life Ins. Co. v. Breen*, No. 15-3250, 2018 WL 4503945, at *5 (E.D. La. Sept. 20, 2018) (Vance, J.) (denying motion to strike directed to response to a motion); *Wells Fargo Bank, N.A. v. Jones*, No. 07-3599, 2008 WL 11354976, at *2 (E.D. La. June 26, 2008) (Berrigan, J.) (denying motion to strike brief because Rule 12(f) applies to "pleadings," and briefs are not pleadings).

[15] *Caliber Home Loans, Inc. v. Cove*, 346 F.R.D. 65, 70 (N.D. Tex. 2024) (internal citation and quotation marks omitted) (holding that discovery responses and answers are not subject to a Rule 12(f) motion to strike); *S. River Watershed All., Inc. v. DeKalb Cnty.*, 484 F. Supp. 3d 1353, 1362 (N.D. Ga. 2020) (noting that Rule 12(f) only contemplates the striking of a pleading, and therefore, "[m]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike"); *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, No. 13-6397, 2019 WL 3817389 (E.D.N.Y. Aug. 14, 2019) (noting that second circuit courts regularly deny Rule 12(f) motions targeting briefs and memoranda as opposed to pleadings); *Circle Grp., LLC v. Southeast. Carpenters Reg'l Council*, 836 F. Supp. 2d 1327, 1349 (N.D. Ga. 2011) (noting that "[m]otions to strike are governed by Federal Rule of Civil Procedure 12(f)," which "rule applies to pleadings, not to motions or briefs filed in support of motions"); *Jeter v. Montgomery Cnty.*, 480 F. Supp. 2d 1293, 1296 (M.D. Ala. 2007) ("The terms of Rules 12(f) and 7(a) make clear that only material included in a pleading may be [the] subject of a motion to strike and that motions, briefs, or memoranda, objections, or affidavits may not be attacked by the motion to strike." (quotations and citations omitted)); *Int'l Longshoremen's Ass'n, S.S. Clerks Loc. 1624 v. Virginia Int'l Terminals, Inc.*, 904 F. Supp. 500, 504 (E.D. Va. 1995) (explaining a motion to strike is not appropriate for briefs and affidavits because they are not "pleadings" within the meaning of Rule 12(f)); *Hrubec v. National R.R. Passenger Corp.*, 829 F. Supp. 1502, 1506 (N.D. Ill. 1993) (observing that objections to a magistrate judge's report and recommendation, a footnote in a memorandum, a motion to strike, and a party's supporting memorandum are not "pleadings" and therefore are not candidates for Rule 12(f)).

[16] *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 796 (E.D. La. 2013) (Brown, J.).

Federal Rules of Civil Procedure before a default judgment may be entered against a defendant.[17]

In addition, the court "has an affirmative duty to look into its jurisdiction both over the subject

matter and the parties" because "[a] judgment entered without personal jurisdiction is void."[18]

If the procedural prerequisites for entering a default judgment are met, the Court must then

decide whether entry of default judgment is appropriate.[19]  Default judgments are drastic remedies

not favored by the Federal Rules, and courts resort to default judgments only in extreme situations;

indeed, resolution of a case on the merits is preferable a default judgment.[20]  Even if a party is

technically in default, the party seeking default judgment is not entitled to a default judgment as

a matter of right.[21]  The Fifth Circuit looks to six factors when considering whether the entry of a

default judgment is proper:

> (1) the default was caused by a good faith mistake or excusable neglect; (2) if
> there has been substantial prejudice; (3) the harshness of a default judgment;
> (4) if there are material issues of fact; (5) if grounds for a default judgment are
> clearly established; and (6) if the court would think itself obligated to set aside
> the default on the defendant's motion.[22]

And although a defendant is deemed to have admitted all well-pleaded facts alleged against them

after entry of default, a defaulting defendant does not admit conclusions of law.[23]  The district

court remains obliged to consider whether the unchallenged facts constitute a legitimate cause of

---

[17] *Id.* at 794.

[18] *Id.* at 791.  This may include the requirement that Plaintiff present admissible evidence to support the exercise of personal jurisdiction when jurisdiction is challenged.  *LMC Props., Inc. v. Prolink Roofing Sys., Inc.*, No. 23-11090, 2024 WL 4449421, at *6 (5th Cir. Oct. 9, 2024) (per curiam) (vacating decision denying motion to vacate default where district court failed to perform its "affirmative duty" regarding personal jurisdiction where transcript, minute entry and judgment were all silent regarding personal jurisdiction).

[19] *Fagan*, 957 F. Supp. 2d at 796.

[20] *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999) (citing *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 724, 276 (5th Cir. 1989)). .

[21] *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (noting that no party is entitled to a default judgment as a matter of right as same rests in the court's discretion).

[22] *Fagan*, 957 F. Supp. 2d at 796 (quoting *T-Mobile USA Inc. v. Shazia & Noushad Corp.*, No. 08-341, 2009 WL 2003369, at *2 (N.D. Tex. July 10, 2009) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998))).

[23] *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

action.[24]  Thus, a defaulting defendant is still entitled to contest the sufficiency of the complaint

and its allegations based on the admitted facts.[25]  The court should not enter a default judgment

unless the judgment is "'supported by well-pleaded allegations' and . . . ha[s] 'a sufficient basis in

the pleadings.'"[26]

     Moreover, the Court has discretion to set aside a clerk's entry of default for "good cause."[27]

When a party seeks to set aside the entry of default, the court considers whether default was

willful,[28] whether setting it aside would prejudice the adversary, and whether a meritorious defense

is presented.[29]  A plaintiff is not prejudiced where the setting aside of the default simply requires

that plaintiff prove his case.[30]  The court may also consider other factors, such as whether the party

acted expeditiously to correct the default.[31]  The Fifth Circuit has noted that motions to set aside

entry of default are more commonly granted than motions to set aside default judgments.[32]

     In this case, both procedural and substantive issues counsel against entry of default

judgment and in favor of setting aside the entry of default.  First, it is not clear that Plaintiff

properly served CSC.  Plaintiff alleges that CSC is a Delaware corporation with a registered agent

in Sacramento, California.[33]  However, Plaintiff purported to serve CSC by delivering a copy of

the complaint to an address in Georgia (2 Sun Court, Suite 400 in Peachtree Corners, Georgia) by

personal delivery to Alisha Smith.  ECF No. 8.  There is no evidence in the record to establish that

---

[24] 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2688.1 (4th ed. 2025).

[25] *Nishimatsu*, 515 F.2d at 1206.

[26] *Wooten*, 788 F.3d at 498 (quoting *Nishimatsu*, 515 F.2d at 1206).

[27] FED. R. CIV. P. 55(c).

[28] For purposes of Rule 55(a), willfulness means "an intentional failure to respond to litigation." *In re OCA, Inc.*, 551 F.3d 359, 370 & n.32 (5th Cir. 2008) (quotations and citation omitted). .

[29] *Wooten*, 788 F.3d at 500.

[30] *Id.* at 578 (quoting *Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960)).

[31] *Pelican Renewables 2, LLC v. Directsun Solar Energy & Tech.*, LLC, 325 F.R.D. 570, 575 (E.D. La. 2016) (Fallon, J.) (citing *In re Chinese Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014)).

[32] *In re OCA*, 551 F.3d at 370.

[33] ECF No. 27-3 at 3.

either this address or recipient is proper under Rule 4(h) or (e)(1). In addition, CSC challenges the Court's personal jurisdiction and has submitted an affidavit establishing that, while it serves as Equifax's agent for service of process throughout the United States, it has no offices, presence or contacts with Louisiana. ECF No. 39-1.

Further, CSC states that its failure to file a responsive pleading was based on its mistaken belief that Plaintiff served it as Equifax's agent for service rather than as a defendant itself. This mistaken impression is understandable given that CSC is only identified on the same line as Equifax in both the caption and listing of defendants, CSC is not listed as a defendant in the introductory sentence naming only Experian, TransUnion and Equifax as defendants, and Plaintiff includes no allegations whatsoever directed to any misconduct allegedly committed by CSC. *See* ECF No. 1 at 1-2. Moreover, CSC took prompt action to correct the failure to respond timely by filing Motion to Set Aside Default within three days of the Clerk's entry of default. ECF Nos. 30, 31. Plaintiff is not prejudiced within the meaning of Rule 55 by setting aside the default as same simply requires him to prove his case, and there are material disputes and questions regarding whether Plaintiff is entitled to any relief against CSC based on the allegations of the Complaint.

Accordingly, considering the unsettled issues with service and personal jurisdiction, the absence of any facts alleged in the complaint to establish liability on behalf of CSC, the harshness of default, the material facts in dispute, the lack of prejudice, and the apparent good faith mistake rather than willful or intentional failure to timely respond, entry of default judgment is not proper. Rather, the Court should set aside the entry of default and allow CSC to file responsive pleadings.

### C. <u>CSC's Rule 12(b)(2) and 12(b)(6) Motions</u>

The court should consider a motion raising a jurisdictional challenge before considering a motion directed to the merits as that prevents a court without jurisdiction from prematurely

dismissing a case.[34]  Accordingly, CSC's Rule 12(b)(2) motion asserting the absence of personal jurisdiction will be addressed first.

"When personal jurisdiction is challenged, the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'"[35]  To establish personal jurisdiction over a defendant, that party must have "purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state" and the exercise of jurisdiction over the defendant must not offend the "traditional notions of fair play and substantive justice."[36]  Minimum contacts with a state are established through specific or general jurisdiction.[37]  Over the last fifteen years, the Supreme Court has repeatedly emphasized the due process limitations on the exercise of personal jurisdiction in the context of both general and specific jurisdiction.[38]

A court has general jurisdiction over such a defendant if "their affiliations with the State

---

[34] *Hines v. Stamos*, 111 F.4th 551, 564 (5th Cir. 2024) (reiterating well established rule that federal court may not rule on the merits of a case without first confirming subject matter and personal jurisdiction with limited exception for threshold non-merits bases for dismissal) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007))); *see also Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam)).

[35] *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Mink v. AAAA Dev. LLC.*, 190 F.3d 333,335 (5th Cir. 1999)); *accord. Savoie v. Pritchard*, 122 F.4th 185, 190 (5th Cir. 2024) (quoting *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (citation omitted))

[36] *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 250-51 (5th Cir. 2019) (quoting *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994))).

[37] *Strong v. Bank of Am. Corp.*, No. 25-10199, 2025 WL 1795109, at *1 (5th Cir. June 30, 2025) (per curiam) (citing *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)).

[38] For specific jurisdiction cases, see *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255 (2017) (dismissing claims of non-resident plaintiffs because specific jurisdiction requires each co-plaintiff establish a connection between his own claim in the forum state and the defendant's contact with the forum state); *Walden v. Fiore*, 571 U.S. 277 (2014) (no specific jurisdiction in Nevada for resident's intentional tort claim against Georgia resident despite knowledge that conduct would cause injury in Nevada).  For general jurisdiction cases, see *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402 (2017) (no general jurisdiction because entity is neither incorporated in nor based its principal place of business in the forum state); *Daimler AG v. Bauman*, 571 U.S. 117 (2014) (Fourteenth Amendment's Due Process Clause does not permit a state to hale an out-of-state corporation before its courts when the corporation is not "at home" in the State and the episode-in-suit occurred elsewhere); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.").

are so 'continuous and systematic' as to render them essentially at home in the forum State."[39] General jurisdiction extends to "any and all" claims against the defendant concerning events and conduct anywhere in the world, but such breadth of exposure comes with a reciprocal limitation on what forum allows for same.[40] "Continuous and systematic" contacts with the forum equates to the defendant being "essentially at home" there.[41] Normally, a corporation is "at home" in its "place of incorporation and principal place of business,"[42] and it is "incredibly difficult to establish general jurisdiction in a forum" elsewhere.[43]

Specific jurisdiction exists when the "non-resident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."[44] The latter analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with person who resides there."[45] The Fifth Circuit has articulated a three-step analysis for assessing specific personal jurisdiction: (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[46]

---

[39] *Goodyear Dunlop*, 564 U.S. at 919 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

[40] *Douglas v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 242 (5th Cir. 2022) (en banc) (quoting *Goodyear Dunlop*, 546 U.S. at 919; *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)).

[41] *McGuire v. B. Braun Med. Inc.*, No. 25-393, 2025 WL 3214107, at *2 (E.D. La. Nov. 18, 2025) (Vance, J.) (quoting *Goodyear Dunlop*, 564 U.S. at 919).

[42] *Douglas*, 46 F.4th at 242 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

[43] *McGuire*, 2025 WL 3214107, at *2 (quoting *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014))); *Long v. Patton Hosp. Mgmt., LLC*, No. 15-2213, 2016 WL 760780, at *5 (E.D. La. Feb. 26, 2016) (Barbier, J.) (quoting *Monkton Ins. Servs.*, 768 F.3d at 432).

[44] *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (internal quotations and citation omitted).

[45] *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

[46] *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

Plaintiff argues that CSC's service as a registered agent for an entity doing business in Louisiana is "purposeful availment" necessary to satisfy due process, and that Louisiana's requirement that a foreign entity register to do business and consent to jurisdiction suffices. ECF No. 41 at 2-3. A subsidiary, even one that is wholly-owned, is presumed independent of its parent for jurisdictional purposes, and that presumption may be overcome only with clear evidence that demonstrates that the subsidiary is alter ego of the parent, or in other words, that they are "fused."[47] To require clear evidence of such is to require "something beyond the subsidiary's mere presence within the bosom of the corporate family."[48] The factors a court considers to determine whether a corporation is fused with its subsidiary for purposes of jurisdictional imputation of contacts are:

> (1) the amount of stock owned by the parent of the subsidiary;
> (2) whether the entities have separate headquarters, directors, and officers;
> (3) whether corporate formalities are observed;
> (4) whether the entities maintain separate accounting systems; and
> (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities.[49]

These factors are to be considered "when jurisdiction is sought over [a] subsidiary because of the activities of its parent" as well.[50] And imputation is even less likely in the context of a simple contractual business relationship.[51] Plaintiff does not allege Equifax and CSC are fused for jurisdictional purposes based on a parent-subsidiary relationship and in consideration of these

---

[47] *Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC Mediterranean Shipping Co. S.A.*, 91 F.4th 789, 800-01 (5th Cir. 2024) (quoting *Diece-Lisa*, 943 F.3d at 251).

[48] *Dickinson Marine*, 179 F.3d at 338; *accord. Alpine View*, 205 F.3d at 219 ("[T]he degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship." (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983))).

[49] *Conti 11*, 91 F.4th at 801 (citing *Diece-Lisa*, 943 F.3d at 251; *Hargrave*, 710 F.2d at 1160 (discussing factors)).

[50] *Turan v. Universal Plan Invs. Ltd.*, 248 F.3d 1139, 2001 WL 85902, at *3 (5th Cir. 2001) (per curiam) ("Although *Hargrave* analyzed the elements necessary to subject a *parent* to personal jurisdiction because of the activities of its *subsidiary*, 'the same legal principles apply' when jurisdiction is sought over the *subsidiary* because of the activities of its *parent*." (emphasis in original) (quoting *Walker v. Newgent*, 583 F.3d 163, 167 (5th Cir. 1987) (based on agency relationship between parent and its subsidiary, parent's contacts with forum state may be imputed to subsidiary))).

[51] *Diece-Lisa*, 943 F.3d at 253 (holding that a licensee's contacts with a state cannot be imputed to the licensor).

factors; rather he relies "solely" on their contractual business relationship, which is insufficient to establish personal jurisdiction over CSC.[52]

Nor has Plaintiff provided any evidence necessary to establish that CSC's contacts with Louisiana are substantial, continuous, and systematic as necessary to satisfy due process requirements for general personal jurisdiction. Although CSC fails to specify its state of formation or principal place of business, it does not appear on the Louisiana Secretary to State website. Its absence from the Louisiana Secretary of State website indicates that it is neither formed in Louisiana nor registered to do business in Louisiana. Assuming without deciding that Louisiana employs a consent by registration approach,[53] without having itself registered to do business, CSC could not have consented to jurisdiction as contemplated by *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023). And while Plaintiff argues that CSC role as Equifax's agent suffices to establish contacts with Louisiana because Equifax does business in Louisiana, the Louisiana Secretary of State website does not reflect that Equifax's registered agent for service of process in Louisiana is CSC; rather, it is The Prentice-Hall Corporation Systems, Inc. at 450 Laurel Street, 8th Floor in Baton Rouge, Louisiana.

Given CSC's evidence that it has no office, does not accept service of process, earns no revenue, and performs no functions in Louisiana (ECF No. 39-1 ¶¶6-8) and the absence of any evidence from Plaintiff to establish that CSC is "essentially at home" in or directed any activities to Louisiana, Plaintiff has not established the exercise of either general or specific personal jurisdiction over CSC in Louisiana would comport with the Due Process Clause. Having found

---

[52] *Id.*

[53] *Louisiana Coll. v. Lubbock Christian Univ.*, No. 23-928, 2024 WL 3859880, at *6 (W.D. La. Apr. 24, 2024) (holding that Louisiana does not require a foreign entity to consent to jurisdiction as a condition of doing business in the state, and absent a statute explicitly requiring consent, the mere appointment of an agent for process is not a waiver of the right to due process), *R.&R. adopted*, 2024 WL 3852354 (W.D. La. Aug. 16, 2024).

that CSC's Rule 12(b)(2) motion should be granted, the Court need not address its Rule 12(b)(6) motion.

### D. **Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." "A motion to dismiss for failure to state a claim is not meant to resolve disputed facts or test the merits of a lawsuit."[54] Rather, it tests whether, in plaintiff's best-case scenario, the complaint states a plausible case for relief.[55] When a plaintiff is proceeding *pro se*, the pleading must be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers."[56]

The Supreme Court clarified the Rule 12(b)(6) standard of review in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To avoid dismissal, a complaint must contain sufficient factual content to state a claim to relief that is plausible on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[57] Thus, it is not enough to allege facts consistent with a claim because the allegations must move past possibility and to plausibility of "entitle[ment] to relief."[58] If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[59]

> Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit

---

[54] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

[55] *Id.*

[56] *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (citations omitted).

[57] *Twombly*, 550 U.S. at 555, 570 (citation omitted).

[58] *Id.* at 557–58; *Iqbal*, 556 U.S. at 678.

[59] *Iqbal*, 556 U.S. at 678 (citation omitted).

the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief."[60]

The complaint need not contain detailed factual allegations, but it must offer more than labels, legal conclusions, or formulaic recitations of the elements of a cause of action as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[61]  The complaint must include enough factual matter to raise a right to relief above the speculative level[62] and provide a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[63]

Although all well-pleaded facts are accepted as true and the complaint is considered in the light most favorable to the plaintiff, the Court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[64]  "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[65]

### E.  Availability of Amendment

Under Rule 15(a)(2), the "court should freely give leave [to amend] when justice so requires."[66]  Although leave to amend is not automatic,[67] given Rule 15(a)(2)'s bias in favor of

---

[60] *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citation omitted) (stating that where the facts do not allow the court to infer more than a mere possibility of misconduct, the complaint does not show that the pleader is entitled to relief).

[61] *Iqbal*, 556 U.S. at 678 (citations omitted).

[62] *Twombly*, 550 U.S. at 555.

[63] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 559-60).

[64] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (same); *see also Twombly*, 550 U.S. at 555 (" [The] obligation to provide the grounds of [] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations omitted and alterations in original)).

[65] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (citation omitted).

[66] Denial of leave to amend is reviewed for abuse of discretion. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006).  The term "discretion" in this context "may be misleading, because [Rule] 15(a) evinces a bias in favor of granting leave to amend." *Mayeaux v. La. Health Sers. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (quoting *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000)).  A district court properly exercises its discretion under Rule 15(a)(2) when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility. *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (citation omitted).

[67] *Avatar Expl., Inc. v. Chevron U.S.A., Inc.,* 933 F.2d 314, 320 (5th Cir. 1991).

granting leave to amend, a court "must possess a 'substantial reason' to deny a request."[68]  The five relevant factors considered in determining whether leave to amend is proper or there is substantial reason to deny the request are: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment.[69]  Denial of leave to amend is reviewed for abuse of discretion,[70] but absent a "substantial reason," the court's discretion "is not broad enough to permit denial" of a request for leave to amend.[71]

Generally, before dismissing a *pro se* complaint under Rule 12(b)(6), unless amendment would be futile, the court should give the plaintiff notice of the complaint's deficiencies and an opportunity to amend.[72]  As the Supreme Court stated:

> Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon.  These procedures alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.[73]

Unless it is clear that a plaintiff is unwilling or unable to amend in a manner that will avoid dismissal, the court errs in not providing a *pro se* plaintiff with at least one opportunity to cure

---

[68] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citation omitted); *accord. Mayeaux,* 376 F.3d at 425 (quoting *Stripling*, 234 F.3d at 872; *Foman v. Davis*, 371, 178, 182 (1962)).

[69] *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. Jan. 1981) (quoting *Foman*, 371 U.S. at 182); *see also Spicer*, 751 F.3d at 367 (citation omitted); *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile.").

[70] *Carroll*, 470 F.3d at 1174 (citation omitted).

[71] *Mayeaux*, 376 F.3d at 425 (citing *Martin's Herend Imps., Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999); *Stripling*, 234 F.3d at 872).

[72] *Meeks v. DeBouse*, No. 24-10431, 2024 WL 4457846, at *1 (5th Cir. Oct. 10, 2024) (per curiam) (citing *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994)); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted).

[73] *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989) (emphasis added), *superseded by statute on other grounds as stated in Irizarry v. Sec'y, Fla. Dep't. of Corr.,* No. 21-10591, 2021 WL 3231163, at *1 n.1 (11th Cir. July 22, 2021).

pleading deficiencies before dismissing.[74]  When, however, the "complaint alleges the plaintiff's

best case," a further factual statement from the plaintiff need not be allowed.[75]

### F.  Fair Credit Reporting Act ("FCRA")

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in

the banking system, and protect consumer privacy."[76]  To achieve those goals, the FCRA regulates

consumer  reporting  agencies  that  compile  and  disseminate  personal  information  about

consumers.[77]  A consumer file is composed of "all of the information on that consumer recorded

and retained by a consumer reporting agency regardless of how the information is stored."[78]

The FCRA requires consumer reporting agencies to "adopt reasonable procedures for

meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to

the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of

such information."[79]  Generally, an item of information is "inaccurate" within the meaning of the

FCRA "either because it is patently incorrect, or because it is misleading in such a way and to such

an extent that it can be expected to adversely affect credit decisions."[80]

Section 1681i sets forth the procedures a consumer reporting agency must follow when a

consumer disputes the completeness or accuracy of information in the consumer's file.    When a

---

[74] *Dierlam v. Trump*, 977 F.3d 471, 478 n.44 (5th Cir. 2020) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)); *see also Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011) (cleaned up); *Brown v. Brown*, 842 F. App'x 948, 949 (5th Cir. 2021) ("Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." (quoting *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020) (internal quotation marks and citation omitted))).

[75] *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (citation omitted).

[76] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020) (stating that "Congress enacted the FCRA to ensure fair and accurate credit reporting that protects consumers while meeting the needs of commerce" (citation omitted)).

[77] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 418 (2021); *see* 15 U.S.C. § 1681a(f) (defining "consumer reporting agency").

[78] § 1681a(g).

[79] *Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 284–85 (5th Cir. 2025) (citing 15 U.S.C. § 1681(b)).

[80] *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) (citing *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986)).

consumer disputes the completeness or accuracy of any item of information contained in the consumer's file, the agency must conduct a reasonable reinvestigation to determine whether the disputed information is accurate.[81]  The agency must "review and consider all relevant information submitted by the consumer" regarding the disputed information.[82]  Within 30 days of notice of the dispute, the agency must either record the current status of the disputed information in the consumer's file or delete or modify the disputed item of information if it is "inaccurate or incomplete or cannot be verified."[83]  Information in a consumer's file which is found to be inaccurate must be "promptly" deleted or modified.[84]

The agency may cease reinvestigating if it reasonably determines the consumer's dispute is "frivolous or irrelevant," including by reason of the consumer's failure "to provide sufficient information to investigate the disputed information."[85]  In that instance, however, the agency must notify the consumer within five days if it determines the dispute is frivolous or irrelevant and terminates the reinvestigation.[86]  Within five days after completing the reinvestigation, the agency must provide the consumer with notice of the results and the consumer's rights relating to those results.[87]

"If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute."[88]  The consumer reporting agency must include this statement, or a summary of the dispute, with the disputed information in future consumer reports.[89]

---

[81] 15 U.S.C. § 1681i(a)(1)(A).
[82] *Id.* § 1681i(a)(4).
[83] *Id.* § 1681i(a)(1)(A), (5)(A)(i).
[84] *Id.* § 1681i(a)(5)(A)(i).
[85] *Id.* § 1681i(a)(3)(A).
[86] *Id.* § 1681i(a)(3)(B).
[87] *Id.* § 1681i(a)(6).
[88] *Id.* § 1681i(b).
[89] *Id.* § 1681i(c); *see* § 1681a(d) (defining "consumer report").

While the FCRA requires a consumer reporting agency to delete or modify disputed information the agency finds to be "inaccurate" or "cannot be verified" upon reinvestigation,[90] it does not define "inaccurate" or "verified," so courts use the ordinary meaning of those terms.[91] The ordinary meaning of "verify" is: "1 To prove to be true; confirm; substantiate. 2 To confirm the truth or truthfulness of. 3 To authenticate."[92] And the Fifth Circuit has defined "inaccurate" in the FCRA context as "patently incorrect" or "misleading."[93] A credit report does not become inaccurate whenever there is an omission, but only when an omission renders the report "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."[94]

While some courts have suggested that "mere imprecision" or clerical errors are not "patently incorrect information" as required by the FCRA,[95] other courts have looked to § 1681i's express provision that "any item of information contained in a consumer's file at a consumer reporting agency" may be disputed by the consumer to hold that identifying information may be disputed under the FCRA.[96] However, even there mere fact that Plaintiff's name is misspelled

---

[90] § 1681i(a)(5)(a)(i).

[91] *Reyes*, 140 F.4th at 288 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (internal quotation marks omitted)); *United States v. Santos*, 553 U.S. 507, 511 (2008) ("When a term is undefined, we give it its ordinary meaning.")).

[92] *Id.* (quoting WEBSTER'S COLLEGIATE DICTIONARY 1064 (3d ed. 1919)).

[93] *Id.* (quoting *Sepulvado*, 158 F.3d at 895).

[94] *Hammer*, 974 F.3d at 568.

[95] *See Spencer v. Specialized Loan Servicing, LLC*, No. 19-1536, 2021 WL 4552548, at *7 (N.D. Tex. Sept. 1, 2021); (quoting *Shaunfield* v. *Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 798 (N.D. Tex. 2014)); *Duren v. Westlake Servs. LLC*, No. 25-307, 2025 WL 2821247, at *4 (N.D. Tex. Sept. 17, 2025) (quoting same), *R.&R. adopted*, 2025 WL 3036984 (N.D. Tex. Oct. 30, 2025).

[96] *See e.g.*, *Alford v. TransUnion LLC*, No. 25-1569, 2025 WL 830125, at *2 (D.N.J. Mar. 17, 2025) (quoting § 1681i(a)(1)(A)) (allowing FCRA claim to proceed past screening stage based on allegations that consumer report inaccurately reflected his address, phone number, and name, and defendant failed to take corrective action after plaintiff disputed the accuracy of that information); *Shaunfield*, 991 F. Supp. 2d at 796 (denying defendant's Rule 12(c) motion on plaintiff's § 1681i claim where plaintiff complained of inaccurate birth date included on credit report); *Jones v. Experian Info. Sols., Inc.*, 982 F. Supp. 2d 268, 273 (S.D.N.Y. 2013) (holding that plaintiff stated claim under § 1681i(a) by alleging credit report inaccurately reflected her birth date, name spelling, and address); *Waterman v. Experian Info. Sols., Inc.*, No. 12–01400, 2013 WL 675764, at *1, *3 (C.D. Cal. Feb. 25, 2013) (denying the motion

will not establish a violation of FCRA.[97]   Indeed, a plaintiff does not state a claim based on conclusory assertions of inaccuracy.  Rather, to state a claim, the plaintiff set forth facts specifying exactly what errors are reflected in the reports as well as the dates and circumstances surrounding the purported errors[98] as well as specific factual allegations regarding the credit reporting agencies' procedures or violations of the FCRA.[99]

To prevail on a § 1681i claim, the plaintiff must prove that the disputed information in the file is inaccurate.[100]   Although § 1681i requires prompt deletion of disputed information that is inaccurate or unverifiable, the alleged inaccuracy must first be "sufficiently objectively verifiable" to be actionable under the FCRA.[101]   When the allege inaccuracy is based on a not-yet-adjudicated position that the debt is not legally valid, the report is not inaccurate for purposes of a § 1681i claim as the FCRA does not provide a vehicle for a plaintiff to challenge the legal validity of the debt to the creditor.[102]   Rather, the plaintiff is obliged to dispute the validity of the debt with the

---

to dismiss the plaintiff's § 1681e(b) claim where the complaint alleging credit report with inaccurate information, including accounts with two banks and wrong birth date).

[97] *Waller v. TransUnion, LLC*, No. 24-0890, 2024 WL 5159258, at *5-6 (D. Md. Dec. 18, 2024).

[98] *See Clark v. Experian*, No. 25-792, 2025 WL 1426080, at *4 (E.D. Pa. May 16, 2025) (noting plaintiff has alleged incorrect spellings and variations of her name, wrong social security numbers and erroneous addresses but not any "facts specifying . . . what those errors were, what consumer credit accounts were involved, or the dates and circumstances surrounding the purported errors" (citing *Cook v. TransUnion*, No. 23-1146, 2024 WL 128204, at *2 (E.D. Pa. Jan. 11, 2024) (finding plaintiff failed to allege sufficient facts regarding the inaccurate information); *Cruel v. Experian*, No. 22-5236, 2023 WL 4140828, at *3 (E.D. Pa. June 22, 2023) (finding that plaintiff did not state plausible claim by alleging that information was wrong but without providing facts about her accurate information); *Peeples v. Equifax Info. Servs., LLC*, No. 23-617, 2023 WL 4374411, at *3 (E.D. Pa. July 6, 2023) (concluding that a claim that credit reports contained inaccurate information with respect to certain stores did not "sufficiently set forth facts describing what inaccurate information [the plaintiff] believe[d] was included . . . nor clearly explained why the information was inaccurate"))).

[99] *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 843 (5th Cir. 2004).

[100] *Reyes*, 140 F.4th at 286.

[101] *Reyes*, 140 F.4th at 288 (citing *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 270 (2d Cir. 2023)); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 40 (2d Cir. 2023) ("[A]n FCRA claim alleges an 'inaccuracy' so long as the challenged information is objectively and readily verifiable."); *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025) ("Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation."); *see also Mader*, 56 F.4th at 269-70 (explaining that if an alleged inaccuracy "evades objective verification"—like inaccuracies that turn on legal disputes—it is not cognizable under the FCRA).

[102] *Reyes*, 140 F.4th at 287.

furnisher of the information or append a note to their credit report to show the claim is disputed.[103]

Section 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."[104]  This provision does not hold a consumer reporting agency strictly liable for all inaccuracies.[105]  Rather, the adequacy of the consumer reporting agency's procedures is judged according to "what a reasonably prudent person would do under the circumstances."[106]

A consumer may bring a civil action against a credit reporting agency for negligent or willful violations of its statutory obligations.[107]  A claim under the FCRA claim must be brought within the earlier of (1) two years after the date of discovery by the plaintiff of the violation that is the basis for such liability or (2) five years after the date on which the violation that is the basis for such liability occurred.[108]  For a negligent violation, the FCRA allows a plaintiff to recover actual damages[109] (i.e., out-of-pocket monetary losses, injury to credit reputation and mental

---

[103] *Id.* (citing *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1244 (10th Cir. 2015); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009) (noting that "the furnisher of credit information stands in a far better position to make a 568 (5th Cir. 2020) (citing 15 U.S.C. § 1681e(b)).

[103] Thompson v. San Antonio Retail thorough investigation of a disputed debt than the [consumer reporting agency]")).

[104] *Hammer*, 974 F.3d at 568 (quoting 15 U.S.C. § 1681e(b)).

[105] *Thompson v. S.A. Retail Merchs. Ass'n*, 682 F.2d 509, 513 (5th Cir. 1982); *see* Pinner, 805 F.2d at 1262.

[106] *Hammer*, 974 F.3d at 568 (quoting *Thompson*, 682 F.2d at 513); *see also Cousin v. Trans Union Corp.*, 246 F.3d 359, 368 (5th Cir. 2001).

[107] *Sepulvado*, 158 F.3d at 895 (citing 15 U.S.C. §§ 1681n, 1681o).

[108] 15 U.S.C. § 1681p.  Courts are divided over whether an alleged inaccuracy occurring outside of the limitations period but included on reports within the limitation period is barred.  *Compare Bittick v. Experian Info. Sols., Inc.*, 419 F. Supp. 917, 919 (N.D. Tex. 2006) (refusing to allow additional reports to reset the statute of limitations because that would permit plaintiffs "to indefinitely extend the limitations period by simply sending another complaint letter to the credit reporting agency"), *and Trans Union LLC v. Lindor*, 393 F. App'x 786, 788 (2d Cir. 2010) (affirming limitation bar where plaintiff's claim based on all same information that existed before expiration of the statute of limitation), *with Marcinski v. RBS Citizens Bank, N.A.*, 36 F. Supp. 3d 286, 290 (S.D.N.Y. 2014) (noting that each alleged failure to comply with FCRA "constitutes a separate FCRA violation, even though the violations stem from the same allegedly false or inaccurate credit information").

[109] *Schultz v. HomeBridge Fin. Servs., Inc.*, No. 24-50193, 2025 WL 1467431, at *2 (5th Cir. May 22, 2025) (per curiam) (quoting *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316, 317 (5th Cir. 2012); § 1681o; § 1681n(a)).

anguish, humiliation, or embarrassment[110]).  In proving actual damages, "[e]ach element of damage must be linked to [defendant's] failure to comply with its FCRA obligations."[111]  For a willful violation, the plaintiff may recover actual, statutory, and punitive damages.[112]  However, FCRA liability attaches only after the furnisher of credit information has received notice of a dispute from a credit reporting agency.[113]

In this case, Plaintiff alleges that Defendants negligently and/or willfully failed to reasonably investigate disputed items in violation of § 1681i and failed to maintain accurate procedures in violation of § 1681e(b).  Plaintiff has not, however, identified with specificity each alleged inaccuracy, the date he disputed each alleged inaccuracy, the result of any investigation or re-investigation or any procedures employed by Defendants.  As such, Plaintiff's Complaint (and proposed Amended Complaint) fail to state a cause of action.  However, it is not clear that Plaintiff would not be able to state a claim or that he has stated his best FCRA claim.  For that reason, Plaintiff should be granted an opportunity to amend to cure the deficiencies, specifically, with regard to his *FCRA claim only*, Plaintiff should be given 21 days within which to file an Amended Complaint that properly identifies each alleged inaccuracy, the date he disputed each alleged inaccuracy, the procedures employed by Defendants relating to same, and the result of any investigation or re-investigation.

---

[110] *Childers v. Rent-A-Ctr. E., Inc.*, 751 F. Supp. 3d 650, 664 (E.D. La. 2024) (Brown, J.) (citing *Fischl v. Gen. Motors Acceptance Corp.*, 708 F.2d 143, 148 (5th Cir. 1983) (citing *Anderson v. United Fin. Co.*, 666 F.2d 1274 (9th Cir. 1982); *Owens v. Magee Fin. Serv. of Bogalusa, Inc.*, 476 F. Supp. 758 (E.D. La. 1979))).

[111] *Schultz*, 2025 WL 1467431, at *3 (citing *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 738 (S.D. Tex. 2006), *aff'd*, 224 F. App'x 415 (5th Cir. 2007)); *see also Pinner*, 805 F.2d at 1265.

[112] *Schultz*, 2025 WL 1467431, at *2 (citing Smith, 703 F.3d at 317; § 1681o; §1681n(a)).  A defendant does not act willfully by "fail[ing] to investigate adequately and fail[ing] to correct inaccurate information in the plaintiff's credit report."  *Id.* (quoting *Stevenson v. TRW Inc.*, 987 F.2d 288, 294 (5th Cir. 1993)).  Rather, a willful violation requires a showing of willful misrepresentations or concealments or a conscious or reckless disregard of the FCRA.  *Id.* (citing Stevenson, 987 F.2d at 294; *Cousin*, 246 F.3d at 372; *Cameron v. Greater New Orleans Fed. Credit Union*, 713 F. App'x 238, 240 (5th Cir. 2018)).

[113] *See* 15 U.S.C. § 1681s-2(b)(1) ("After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . . ").

G. **Trademark Infringement**

To establish a claim of trademark infringement under the Lanham Act, a plaintiff must show "(1) it possesses valid trademarks; and (2) [a defendant's] use of [a plaintiff's] trademarks creates a likelihood of confusion as to source, affiliation, or sponsorship."[114] Thus, plaintiff must establish both (1) ownership of a legally protectable mark and (2) a likelihood of confusion created by an infringing mark.[115]

A mark is protectable if it is distinctive, meaning it must be "capable of distinguishing the applicant's goods from those of others."[116] An identifying mark can be inherently distinctive or can acquire distinctiveness through "secondary meaning."[117] Terms that are primarily surnames are deemed to be descriptive and thus unprotectable absent proof of secondary meaning.[118] A mark develops secondary meaning "when, in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself."[119] To determine whether a mark has acquired secondary meaning, the Fifth Circuit considers (1) the length and manner of use of the mark or trade dress, (2) sales volume, (3) amount and manner of advertising, (4) the nature of the use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) defendant's intent in copying the mark.[120]

---

[114] *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015).

[115] *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018); *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).

[116] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).

[117] *Id.* (quoting *Wal-Mart Stores, Inc. v. Samara Bros, Inc.*, 529 U.S. 205, 210–11 (2000)).

[118] 15 U.S.C. § 1052(e); *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc*., 80 F.4th 607, 619 (5th Cir. 2023) (agreeing with other circuits to hold that personal names—both surnames and first names—are generally regarded as descriptive terms which require proof of secondary meaning); *Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738, 747 (W.D. Tex. 2014); *see also Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 131 (2d Cir. 2004) (stating that a proper name such as Brennan's is descriptive because it does not by itself identify a product but can develop a secondary meaning through registration and use that comes to identify a product as originating from a single source).

[119] *Wal-Mart Stores, Inc.*, 529 U.S. at 211 (internal quotations omitted).

[120] *Viacom Int'l v. IJR Cap. Invs. LLC*, 891 F.3d 178, 190 (5th Cir. 2018) (quoting *Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 445 (5th Cir. 2015)); see also *Amy's Ice Cream*, 60 F. Supp. 3d at 748 (citing *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541 (5th Cir. 1998)).

To prevail on an infringement claim, Plaintiff must show that "the defendant's use of the mark creates a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product at issue."[121]  To determine whether a likelihood of confusion exists, courts consider a non-exhaustive list of so-called "digits of confusion," including: (1) strength of the mark, (2) mark similarity, (3) product or service similarity, (4) outlet and purchaser identity, (5) advertising media identity, (6) defendant's intent, (7) actual confusion, and (8) care exercised by potential purchasers.[122]

Even if Plaintiff had alleged sufficient facts to establish that his name has acquired a secondary meaning as necessary to become protectable under the Lanham Act, Plaintiff cannot demonstrate that Defendants have used his mark in a confusing manner.  Rather, at most, Plaintiff shows that Defendants, which are in the business of providing consumer reports, identified the consumer report associated with Plaintiff by Plaintiff's name.  Defendants are not alleged to have attempted to use Plaintiff's name in a similar industry or in any other manner that could cause consumer confusion.  Plaintiff fails to state a Lanham Act claim.  And because any amendment would be futile, leave to amend as to this claim is not necessary.

**H.  State Law Claims**

The FCRA preempts state law claims unless the plaintiff consumer proves "malice or willful intent to injure" him.[123]  Plaintiff's complaint does not allege facts necessary to avoid the preemptive provision of the FCRA.

---

[121] *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v.* Smack Apparel, 550 F.3d 465, 478 (5th Cir. 2008) (internal quotations omitted).

[122] *All. for Good Gov't*, 901 F.3d at 508.

[123] 15 U.S.C. § 1681h(e); *see also Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 638 (5th Cir. 2002) ("The FCRA preempts state law defamation or negligent reporting claims unless the plaintiff consumer proves 'malice or willful intent to injure'" (quoting § 1681h(e)); Fagan, 957 F. Supp. 2d at 800 (preemption of tort claim).

## IV.    **CONCLUSION**

As drafted, Plaintiff's Complaint (and proposed Amended Complaint) fail to state a cognizable claim under the Fair Credit Reporting Act, the Lanham Act or Louisiana law.  Because Plaintiff may be able to state a claim under the FCRA if he can set forth facts the necessary factual allegations regarding the failure to correct inaccurate information after being notified of same, leave to amend should be granted to allow Plaintiff that opportunity with regard to the FCRA claim against Defendants Equifax Information Services LLC, Trans Union LLC, and Experian Information Solutions, Inc. *only*.

With regard to CSC, Plaintiff's Motion to Strike Reply Memorandum must be denied as same is not proper under Rule 12.  As to default, considering the issues with service and personal jurisdiction, the absence of any facts alleged in the complaint to establish liability on behalf of CSC, the harshness of default, the material facts in dispute, the lack of prejudice, and the apparent good faith mistake rather than willful or intentional failure to timely respond, entry of default should be set said and Plaintiff's request for entry of default judgment denied.  Further, Plaintiff has not established that the exercise of either general or specific personal jurisdiction over CSC in Louisiana would comport with the due process clause.  Thus, its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2) should be granted, and its Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) dismissed as moot.

## V.    **RECOMMENDATIONS**

Accordingly, for the foregoing reasons,

**IT IS RECOMMENDED** that the Rule 12(b)(6) Motion to Dismiss filed by Defendants Equifax Information Services LLC, and TransUnion LLC, and Experian Information Solutions,

Inc. be GRANTED, but the Court allow Plaintiff 21 days within which to file an amended complaint to allege facts necessary to state a FCRA claim;

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Default Judgment as to CSC Lawyers Incorporating Services be DENIED.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Leave to File Amended Complaint be DENIED WITHOUT PREJUDICE to Plaintiff's right to file an Amended Complaint as directed herein within 21 days.

**IT IS FURTHER RECOMMENDED** that CSC Lawyers Incorporating Services' Motion to Set Aside Default be GRANTED.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Strike be DENIED.

**IT IS FURTHER RECOMMENDED** that CSC Lawyers Incorporating Services' Motion to Dismiss pursuant to Rule 12(b)(2) be GRANTED and to 12(b)(6) be DISMISSED AS MOOT. A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[124]

Dated this ___12th___ day of December, 2025 at New Orleans, Louisiana.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[124] *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).